IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

KATHYRN R. EARNHART,      )
                              )
              Petitioner,   )
v.                            )       CASE NO. CV 04-0474-S-MHW
                              )
                              )       **MEMORANDUM DECISION**
JO ANNE B. BARNHART,     )       **AND ORDER**
                              )
             Respondent.   )
_____  )

## INTRODUCTION

Currently before the Court for its consideration is the Petitioner's request for judicial review (Docket No. 1) of the Respondent's denial of social security disability benefits, filed September 17, 2004.  Petitioner brought this action pursuant to the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g).  On January 24, 2005,  Respondent  filed a Cross-Motion for Summary Judgment (Docket No. 16).  The Court has reviewed the petition for review and the answer, the motion for summary judgment, the parties' memorandums, and the administrative record, and submits its Memorandum Decision as follows.

**I.**

**Background.**

**A.      Administrative Proceedings.**

Petitioner Kathryn R. Earnhart filed applications for a period of disability, disability

insurance benefits, and supplemental security income on April 2, 2002. (AR 55-57.)  She alleged

disability since July 1, 2001.  (AR 55, 88.)   The applications were denied initially, and upon

reconsideration on November 13, 2003.  (AR 28.)  After a timely request for a hearing was filed

on November 27, 2002, Petitioner, represented by counselor Andrea Cardon, appeared and

testified before Administrative Law Judge (ALJ) Robin L. Henrie on August 12, 2003.  (AR

192-242.)  James Grissom testified as a vocational expert. (AR 193.)  Martin Graff testified as a

lay witness.  (AR 193.)

ALJ Henrie considered the testimony and all other evidence of record, and on November

20, 2003, issued a decision finding Petitioner not disabled within the meaning of the Act, and

was therefore not entitled to disability insurance benefits or supplemental security income.  (AR

14.)  This became the final decision of the Commissioner when the Appeals Council declined to

review the ALJ's decision on July 22, 2004.  (AR 5.)  20 C.F.R. §§ 404.981, 416.1481 (1991).

Petitioner has exhausted all administrative remedies and is therefore seeking judicial review

pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**B.      Statement of Facts.**

At the time of the hearing before the ALJ, Petitioner was 33 years old.  (AR 15.)

Petitioner testified that she received a GED and completed 4 years of college.  (AR 15.)

Petitioner's prior work experience consisted of working as a waitress, customer service

representative, secretary, administrative assistant, loan processor and escrow officer assistant.

(AR 13.)  Petitioner alleged disability since July 1, 2002, due to affective disorders (bipolar

disorder) and attention deficit disorder/attention deficit hyperactivity disorder.  (Exhibits 1F, 2f,

7 F, and 8F.)

Petitioner has been treated and/or evaluated by various medical professionals.  Before she

was officially diagnosed with bipolar disorder in April 2002, Petitioner complained to her

Family Physician, Dr. Christian R.D. Stowell, M.D.  On December 23, 1998, Dr. Stowell noted

that Petitioner was very tearful and loud, mildly out of control female, in no acute distress.  (AR

103.)   Following a psychiatric evaluation performed on April 15, 2002 by Dr. Andrew Olnes,

M.D., Petitioner was diagnosed with bipolar II disorder (with a note to consider Attention

Deficit/Hyperactivity Disorder (ADHD)).  During her interview with Dr. Olnes, Petitioner

reported a history of severe mood swings since she was about 19 or 20 years old, characterized

by a monthly cycle during which she experiences manic-type symptoms with pressured speech,

inability to sleep, overachievement and jitteriness followed by a definite low.  (AR 126.)  In her

"low periods," she feels an increased need for sleep, lethargy, increased appetite and binge

eating or a complete loss of appetite, low self-esteem, feelings of guilty, sadness, crying spells,

feelings of hopelessness, and suicidal thoughts without plans.  (AR 126.)  Dr. Olnes prescribed

Depakote to balance her moods and she began medication management visits every four to eight

weeks.

Progress note dated May 13, 2002 indicates Petitioner felt "pretty good," but the

Depakote caused fatigue. (AR 17, 125.)  On June 13, 2002, Petitioner again reported she was

"feeling pretty darn good" and was doing some painting and bought a season pass to "Roaring

Springs,"[1] although she was experiencing some ups and downs with her mood.  (AR 17, 124.)

On October 7, 2003, Petitioner stated she was having 60/40 "good/bad" days, but she was

generally feeling better.  (AR 123.)  As of February 10, 2003, further progress notes indicate that

Petitioner was doing very well, she was very busy, and her moods were under good control. (AR

17, 170.)  On April 29, 2003, Petitioner began noticing increased fluctuations in her mood and

complained about the lack of "consistency" in her life and her inability to carry out simple goals.

(AR 17, 122.)   Dr. Olnes prescribed Topomax to help control her mood swings.  (AR 17, 169.)

On June 30, 2003, Petitioner reported "Topomax was a good call" and that "I felt better than I

have in a long time."  (AR 17, 168.)  Petitioner reported no side effects from the medication and

accompanied her family camping the weekend before the hearing.  (Ar 18, 168.)

     After the hearing, on September 2, 2003, Dr. Olnes opined in a supplemental opinion that

Petitioner had marked limitations in maintaining concentration, persistence, or pace.  (AR 184.)

Dr. Olnes further stated:

> Kathy [Petitioner] clearly has great difficulties with emotional liability, mood swings, &
> dehabilitating bouts of depression, but since she began treatment, I think her condition
> has improved.  Since I have known Kathy, she has not been engaged in any basic
> employment outside the home, so I have no basis to assess her ability to sustain a job.
> Her troubles with persistence at tasks and poor concentration lead me to believe that she
> cannot hold a job, however."  (AR 167.)

---

[1]Roaring Springs is a family water park located in Meridian, Idaho.

**Memorandum Decision and Order - Page 4**

## II.
## Findings of the Administrative Law Judge.

In the decision issued following the hearing (AR ), the ALJ made specific findings as

follows:

1.     The claimant met the disability insured status requirements of the Act on July 1, 2001, the date the claimant alleged an inability to work, and continues to meet them through December 31, 2006.

2.     The claimant has not engaged in substantial gainful activity since the alleged onset date of disability as noted above.

3.     The claimant alleges the severe impairment(s) noted above, which are incorporated herein by reference.

4.     The claimant does have sever impairment(s), which combine to significantly limit the ability to perform basic work-related activities, as set forth in detail above.

5.     The exhibits and testimony do not establish that a listing is met or equaled in this case.

6.     The ALJ has determined the claimant's credibility regarding symptom testimony as set forth in detail above in the body of the decision.  Such credibility findings are incorporated herein by reference.  It is concluded that the claimant's impairments and symptoms do not preclude the performance of her past relevant work as an escrow assistant or the occupations suggested by the vocational expert.

7.     The claimant has no exertional limitations.

8.     The claimant suffers from severe impairments, which reduce the residual functional capacity to the performance of only a limited range of semi-skilled work as set forth in detail in the body of this decision.

9.     The claimant is able to perform her past relevant work as an escrow assistant.

IN THE ALTERNATIVE

10.    The claimant is 33 years of age, which is defined as a "younger individual."

11.    The claimant has 16 years of education.

12.    Work skills are not at issue in this matter.

13. Considering these vocational factors and the claimant's residual functional capacity, she could be expected to make a vocational adjustment to work that exists in significant numbers in the national economy in various occupations cited by the vocational expert, and section 204.00 directs a finding of "not disabled."

14. The claimant has not been under a "disability," as defined in the Social Security Act, at any time prior to the date of this decision.

### III.
### Standard of Review.

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971).  An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal error.  42 U.S.C. § 405(g); *Universal Camera Corp. v. National Labor Relations Board*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); and *DeLorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971).

It is more than a scintilla but less than a preponderance, *Jamerson v. Chater,* 112 F.3d 1064,

1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v.

Underwood*, 487 U.S. 552, 108 S. Ct. 2541, 2550, 101 L. Ed. 2d 490 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by

substantial evidence, even though other evidence may exist which supports the petitioner's

claims.  42 U.S.C. § 405(g); and *Flaten v. Secy of HHS*, 44 F.3d 1453, 1457 (9th Cir. 1995).

Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, shall be

conclusive.  *Id.*  It is well-settled that if there is substantial evidence to support the decision of

the Commissioner, the decision must be upheld even when the evidence can reasonably support

either affirming or reversing the Commissioner's decision, because the Court "may not substitute

[its] judgment for that of the Commissioner." *Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir.

1999).

In reviewing a case under the substantial evidence standard, the Court may question an

ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment

is entitled to great weight, and the ALJ may disregard self-serving statements.  *Rashad v.

Sullivan*, 903 F.2d 1229 (9th Cir. 1990).  Where the ALJ makes a careful consideration of

subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled

role as the judge of credibility will be upheld as based on substantial evidence.  *Matthews v.

Shalala*, 10 F.3d 678 (9th Cir. 1993).

The Social Security Commissioner has established a five-step evaluation process in order

to determine whether a person is disabled for purposes of awarding disability benefits.  20 C.F.R.

§§ 404.1520, 416.920 (1996); *Lester v. Chater,* 81 F.3d 821, 828 n. 5 (9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).  First, the Commissioner determines whether the claimant is engaged in substantial gainful activity.  If the claimant is engaged in such activity, disability benefits are denied.  20 C.F.R. §§ 404.1520(b), 416.920(b).  The ALJ determined that the Petitioner was not involved in any substantial gainful activity.  (AR 22.)

Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c), 404.1529(d)(1); and 416.929(d)(1).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.   The ALJ here found that Petitioner Earnhart's impairments of a bipolar disorder did significantly limit her ability to engage in basic work activities and therefore did constitute a severe impairment.  (AR 22.)

If the impairment is severe, the Commissioner proceeds to the third step of the evaluation process to determine whether the claimant has an impairment which meets or equals those contained in the Listing of Impairments found in Appendix 1, Subpart P, Regulation No. 4.  20 C.F.R. §§ 404.1520(d); 416.920(e).  Appendix 1 contains a list of impairments which would prevent a person from engaging in substantial gainful employment.  If a claimant can show she or he is limited by such an impairment, disability is presumed.  The ALJ here determined that Petitioner did not possess the findings upon examination which are required in order for

disability to be predicated on medical considerations alone, and that Petitioner's impairments did not meet or equal the severity of any listing for affective disorders.  (AR 22.)

If the impairment is not one that is presumed to be disabling, then the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past, i.e. whether the claimant has sufficient residual functional capacity to tolerate the demands of any past relevant work.  If the claimant is able to perform past work, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(e), 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine whether the claimant can perform other work in the national economy in light of her or her age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. 20 C.F.R. §§ 404.1520(f), 416.920(f).  In the instant case, the ALJ determined from the evidence that the Petitioner did retain the residual functional capacity for her past relevant work as an escrow assistant.  (AR 22.)  In the alternative, the ALJ determined Petitioner could perform other work that exists in significant numbers in the national economy.  In reaching this conclusion, the ALJ noted that Petitioner is considered a younger individual, has sixteen years of education, and work skills are not an issue in this matter.  After considering these vocational factors and Petitioner's residual functional capacity, the ALJ determined that Petitioner was not disabled within the meaning of the Act.  (AR 23.)

**IV.**
**Issues Raised.**

The primary issue before the Court is whether the final decision of the Secretary is supported by substantial evidence and whether it is based on proper legal standards.  *Matney ex rel. Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992).  Petitioner contends that the ALJ erred in the following respects:

    1)    The ALJ failed to give clear and convincing reasons for rejecting Petitioner's testimony.

    2)    The ALJ failed to properly evaluate the vocational considerations.

The Court will take each argument in order.

**A.      Whether the ALJ erred in finding Petitioner's testimony was not credible.**

Petitioner urges the Court to conclude the ALJ erred by failing to specify reasons for discounting her testimony as to the severity of her symptoms resulting from her bipolar disorder and in relying upon misconstrued and incorrect facts in reaching his conclusions that Petitioner is not disabled.  Petitioner also argues that the ALJ erred in not considering the record as a whole when assessing her credibility in that the ALJ  improperly disregarded Dr. Olnes's opinion that he believed Petitioner was incapable of working, as well as the opinion of the lay witness, who also opined Petitioner could not maintain productive employment.  The Court will consider each argument in turn, beginning with the ALJ's assessment of Petitioner's credibility.

**1. Petitioner's Testimony**

In evaluating Petitioner's credibility, the ALJ began with a synopsis of Petitioner's medical history and observed, based on Dr. Olnes's progress notes, that Petitioner's erratic emotional state had been significantly moderated with medication.  The ALJ acknowledged that

Petitioner reported some mood swings, however, overall the progress notes throughout 2002 and 2003 show that Petition was "feeling pretty good" and her GAF symptom was 65, indicating only mild symptoms.  She had never been hospitalized for mental illness and the record did not contain any evidence of any thought disorder, psychosis or significant cognitive limitations that would preclude the Petitioner from engaging in gainful activity.

The ALJ, buttressing his positive interpretation of her medical history, noted that Petitioner reported engaging in a the wide range of activities and events.  Specifically, he noted how she assisted her mother in decorating her child's bedroom for three days.  She also took a trip to Spokane, which she enjoyed.  She painted a self-portrait and four other paintings.  The ALJ also noted that Petitioner walks the dog occasionally, assists with household duties, does all the shopping, and runs errands for the family.  On the day before the hearing, Petitioner played hostess to her boyfriend's ex-wife, who had been absent for several years.

To further support her credibility findings, the ALJ cited the opinions of the State agency medical consultants, who had reviewed Petitioner's medical records.  After evaluating the severity of Petitioner's condition, a Disability Determination Services (DDS) physician concluded that Petitioner was only moderately limited in four areas and in the other sixteen areas of function, the physician found that Petitioner was "not significantly limited."  When another DDS physician evaluated Petitioner's condition, he reached the same conclusions approximately four months later.

Relying on these findings, Petitioner's reported activities, and her positive progress reports,  the ALJ discounted Petitioner's subjective symptom complaints and their alleged functional effect in determining such are not totally disabling, either singly or combined.  The

**Memorandum Decision and Order - Page 11**

ALJ also took into account how Petitioner presented at the hearing, observing that she did not appear totally disabled and that she could speak and present well.  (AR 18.)

Courts have consistently held that the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.  *See Meanel v. Apfel,* 172 F.3d at 1113; and *Saelee v. Chater,* 94 F.3d 520, 522 (9th Cir. 1995).  A claimant may not rely upon mere allegations of pain to meet his burden of proof, but must substantiate such allegations with objective medical findings which could reasonably be expected to produce the alleged pain or other symptoms.  *See* 42 U.S.C. § § 423(d)(5)(A) and 1382c(3)(H).  The effect of pain can be assessed within an individual's functional capacity and then an ALJ may evaluate the credibility of a claimant's statements about the pain.  *Id.*  Although a claimant may produce objective medical evidence of an underlying impairment, an ALJ may nonetheless reject the claimant's testimony about the severity of the pain if the ALJ can state specific, clear, and convincing reasons for doing so.  *Smolen v. Chater,* 80 F.3d 1273, 1281-1282 (9th Cir. 1996).  An ALJ is not required to believe every allegation of disabling pain because it would be contrary to 42 U.S.C. § 423(d)(5)(A), and while many medical conditions produce pain it is not always severe enough to preclude gainful employment.  *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989).  While most cases discuss excess pain testimony rather than excess symptom testimony, rules developed to assure proper consideration of excess pain apply equally to other medically related symptoms. *See Sprague v. Bowen*, 812 F.2d 1226, 1231 (9th Cir. 1987) (regarding testimony of pain and depression).

In this instance, the ALJ summarized the Petitioner's testimony with regard to her subjective symptoms and their alleged functional effect.  The ALJ found the Petitioner's

functional allegations, and conclusion of total disability claim, not to be credible because the complaints and limitations were not supported by medical evidence or Petitioner's self-reports of the types of activities she engages in, such as camping, entertaining her boyfriend's ex-wife, playing hostess to her family, driving, painting, and redecorating her child's bedroom.  The ALJ also referred to various positive reports of Petitioner's progress in the medical record in discounting her subjective complaints.  The ALJ relied on both subjective and objective evidence in concluding that Petitioner's testimony is not credible.  The reasons stated by the ALJ in reaching his conclusion are found to be clear and convincing.  Therefore, the Court finds that there is substantial evidence in the record to support the ALJ's finding that Petitioner's testimony in this regard was not credible.

### 2. Disability Opinion of Dr. Olnes

In her brief, Petitioner alludes to the argument that the ALJ improperly disregarded Dr. Olnes's opinion that Petitioner could not maintain employment.  Three weeks after the hearing in this case, Dr. Olnes submitted an opinion, in which he stated that he believed Petitioner met Listing 12.04, and was incapable of working.  The ALJ regarded Dr. Olnes's opinion with diminished weight in this respect.

Under *Morgan v. Comm'r of Soc. Sec. Admin.,* "the opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." 169 F.3d 595, 600 (9th Cir. 1999).  "When there is conflicting medical evidence, the ALJ must determine credibility and resolve the conflict." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  The ALJ, however, must present clear and convincing reasons for rejecting the uncontroverted opinion of a claimant's physician. *See Magallanes v. Bowen*, 881 F.2d 747, 751

(9th Cir. 1989).  Although the treating physician's opinion is given deference, the ALJ may reject the opinion of a treating physician in favor of a conflicting opinion of an examining physician if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Id.* (citation and internal quotation marks omitted).  The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citation and internal quotation marks omitted).  The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.  *See id.; Morgan*, 169 F.3d at 600. The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings. *See Matney*, 981 F.2d at 1019

The ALJ properly resolved ambiguities in medical evidence.  Although Dr. Olnes's submitted an opinion three weeks after the hearing that Petitioner met Listing 12.04, and was incapable of working, Dr. Olnes's prior conclusions contradict that opinion.  While affording Dr. Olnes's opinion "careful consideration," the ALJ cited specific examples in the medical record to demonstrate that the recently submitted opinion by Dr. Olnes's was inconsistent with his own observations: "i.e., "doing well now" (May 23, 2003), "stable, but some days of decreased mood" (July 25, 2002), "doing well" (November 18, 2002), "stable" (December 30, 2002), "doing very well" (February 10, 2003), and "doing very well now" (June 10, 2003)."  In addition, the ALJ noted that Dr. Olnes had reported a considerable improvement in Petitioner's condition and had admitted that he had "no basis to assess her ability to sustain a job."  While the

**Memorandum Decision and Order - Page 14**

ALJ accepted the opinions of Dr. Olnes with regard to medical issues relating to Petitioner's impairments, he correctly concluded that opinions as to a claimant's mental residual functional capacity and ability to work are issues reserved to the Commissioner.  In summary, the ALJ acted in accordance with his responsibility to determine the credibility of medical evidence, and he gave specific, legitimate reasons for discrediting particular opinions.  *See Matney*, 981 F.2d at 1019.

### 3. Martin Graff's Testimony

Martin Graff, Petitioner's "significant other," testified that Petitioner could perform normal daily activities some days, but other days, she struggled to get out of bed.  He also opined that Petitioner could not work productively eight hours a day, five days a week, because she gets too emotional and has trouble finishing projects. The ALJ did not discuss this testimony in his hearing decision.  This omission does not require reversal.

According to C.F.R. § 404.1513(e)(2)(1991), the Commissioner will consider observations by nonmedical sources about how impairments affect a claimant's ability to work.  *See* 20 C.F.R. § 404.1513(e)(2).  The Commissioner's Rulings require the ALJ to consider lay witness testimony in certain types of cases.  SSR 88-13 states that where a claimant alleges pain or other symptoms that are "not supported by medical evidence in the file, the adjudicator shall obtain detailed descriptions of daily activities by directing specific inquiries about the pain and its effects to ... third parties who would be likely to have such knowledge." SSR 88-13.  *See also Smolen*, 80 F.3d at 1289.  The ruling then requires the ALJ to give "full consideration" to such evidence.  *Id.*  Having been directed to consider the testimony of lay witnesses in determining a claimant's disability, the ALJ can reject the testimony of lay witnesses only if he gives reasons

germane to each witness whose testimony he rejects. *Dodrill v. Shalala*, 12 F.3d 678, (9th Cir. 1993).

While the ALJ should give germane reasons to reject lay witness testimony, the Commissioner need not discuss *all* evidence presented to her. *Vincent ex rel. v. Heckler*, 739 F.2d 1393, 1394-1395 (9th Cir. 1984). "Rather, she must explain why significant probative evidence has been rejected." *Id.* (citations and internal quotations marks omitted). Here, the evidence which the Commissioner did not discuss was neither significant nor probative. In *Smolen*, the court found the ALJ committed legal error in improperly disregarding the testimony of the claimant's family members because of the paucity of medical evidence available to evaluate the veracity of claimant's subjective complaints. 80 F.3d at 1289. In this case, the medical record is replete with evidence relating to Petitioner's subjective symptoms, which contradict Mr. Graff's testimony. Although courts have approved of the use of lay testimony in some instances, it is not the equivalent of "medically acceptable ... diagnostic techniques" that are ordinarily relied upon to establish a disability. *See* 42 U.S.C. § 423(d)(3); *Vincent,* 739 F.3d at 1394. Therefore, the ALJ could have properly discounted lay testimony that conflicted with the available medical evidence. It was not notable legal error to omit a discussion of Mr. Graff's testimony in the ALJ's decision in this instance.

### B . Failure to Properly Evaluate the Vocational Expert Testimony

With her last argument, Petitioner contends that the ALJ's analysis of the vocational expert testimony was incorrect. Specifically, Petitioner disputes the ALJ's assessment that an escrow assistant, or the other three named occupations, require only minimal interaction with co-workers and supervisors and a low production rate.

**Memorandum Decision and Order - Page 16**

For the period of time relevant to this inquiry, the Court finds there is substantial evidence to support the findings of the ALJ, who conducted the requisite five-step analysis and determined that at step four, Petitioner, in spite of her bipolar disorder, could return to her work as an escrow assistant.  In reaching this conclusion, the ALJ determined that Petititioner had no exertional limitations and retained the residual functional capacity to perform the full range of semi-skilled work, except the work could not require more than a low stress level – meaning, a low production rate, working occasionally with the general public (brief public contact), minimal supervision and minimal interaction with supervisors and co-workers (no team work), and minimal work setting changes.

The ALJ presented the vocational expert with a hypothetical person similarly situated to Petitioner, who would require a low stress level occupation with a low production rate and only brief contact with the public or her co-workers.  Based on the hypothetical, the vocational expert stated he believed that Petitioner could return to her former employment as an escrow assistant and the ALJ agreed.  Alternatively, the vocational expert concluded that a person with Petitioner's combination of impairments could find work in the national economy as an Addressor, Agricultural Sorter and Cannery Worker.  For some of the categories, the vocational expert reduced the number of available jobs in the national economy by half to reflect the possibility that the stress level and the level of interaction with the public of a particular occupation could vary according to the situation.  In concluding that Petitioner's mental condition is not so severely dehabilitating to prevent her from seeking gainful employment in those occupations, the ALJ properly relied upon the vocational expert's opinion and the evidence

on the record, as detailed above.  Accordingly, the Court finds that the ALJ's and the Appeals Council's decision in this regard should not be reversed.

## V.
## Conclusion.

Based on its review of the entire record, the Court finds that the Commissioner's decision is supported by substantial evidence and is not the product of legal error.  Therefore, the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is AFFIRMED.

**IT IS SO ORDERED.**



DATED: September 28, 2005

_____
Honorable Mikel H. Williams
United States Magistrate Judge